This time we'll hear Gorman v. Rensselaer County. Good morning. May it please the Court, Steven Bergstein for the plaintiff appellate. There are two primary issues on appeal, both of them constitutional questions. Issue number one is whether the plaintiff had a clearly established right under the First Amendment to speak on the sergeant's misuse of the e-justice computer system. And the second issue is whether the plaintiff articulated a cause of action for family association discrimination where the same sergeant physically threatened and otherwise retaliated against the plaintiff because the plaintiff essentially ended Patricelli's relationship with the plaintiff's sister. It's convoluted, but I'll get to that after I talk about the First Amendment question. Yeah, but isn't there a question as to whether Mr. Gorman's report about the abuse of the e-justice system protected speech, whether it was a matter of public concern or whether, as it does appear, he was exacting a spike penalty for somebody's relationship with his sister, which would seem to be a family matter rather than a matter of public concern? Well, that goes to the plaintiff's motive to report the abuse of the e-justice system. This Court has said repeatedly that there will always be some personal motive when somebody speaks on a matter of public concern, but that doesn't predominate the issue. The main question is whether, objectively, the plaintiff still spoke on any matter of concern to the public. Does the record tell us anything about whether an officer in this Department has an obligation to make known to superiors what is actually or perceived to be the use or abuse of taxpayer-funded resources? No. That's sort of the Garcetti question, whether it was the plaintiff's job. That issue does not appear to— I think somebody in law enforcement would, as those of us who hold public trust, have a particular obligation to speak out as a part of our job obligations on a misuse or expenditure of resources that a fellow officer has no business using. Let me answer that. There's a couple of responses to that. Number one, I don't think that issue was developed in discovery, so far as I can tell, about the precise nature of plaintiff's duties and what he was supposed to do when he— You would agree that if it was his duty, you wouldn't be here, right? Correct. Okay. But I don't see anything in the record dealing with the plaintiff's job responsibilities. Patrick Selle was a senior officer. The question would—if the answer to your question is yes, then when would a police officer have a First Amendment right to discuss anything going on in the police department? Well, perhaps that's what one takes on. That is the—not the abrogation, but the loss of that right. The loss of that First Amendment protection when one becomes a police officer. Except there are— And that's not unreasonable, frankly. Except there are cases in this court where police officers did have First Amendment cases, despite Garcetti. I know them. Where they spoke out about problems in the department, like Matthews and Jackler. So I guess my point is that that could be an issue that could be developed on remand because I don't see anything in the record. Was it just the misuse of funds? In other words, asking the police officer to run the e-justice system? Was the use of public monies for a private purpose? I always thought—is the e-justice system similar to the NCIS system? That's what we used to run records check to see if someone had an arrest or conviction record. Is it the same thing? Is that what the e-justice system is? I don't know the NCIS that well, but it sounds like it. It's apparently a secure system that only certified people are allowed to use. And this violation was serious enough that Patricelli was suspended and he was arrested. I'm just following up on Judge Hall's question, which is, is there something more to it than just having a police officer do private work for you, running a records check on somebody that you have a private beef with? Or I always thought that you've got to be careful when you run these NCIS records, that there's got to be a legitimate law enforcement purpose, that if people—if you just wanted to find out if a political opponent had a record, you went in and said, give me the NCIS on Mr. Hall from Vermont. Not that he was a political opponent of anybody. But, you know, that's what I always thought was the evil being addressed in the protection NCIS. Correct. Is that the same thing with e-justice? Yes, because you need to be a certified user of the e-justice system, and Patricelli convinced that certified user to do the background check for a person. I know that's what he did, but why was it wrong to do it? Because it's an abuse of the system. He was doing it for personal reasons. He wasn't doing it for a legitimate law enforcement purpose. He did it because his ex-girlfriend was dating somebody that Patricelli didn't like. But these are public records, though, where you've been convicted of a crime. But he was using a system that's illegal for him to use. The public record angle also wasn't really developed in the district court, so far as I can tell. He was convicted of a misdemeanor for that, right? Right. What was the nature of the misdemeanor conviction? It was described as a computer crime that he pled guilty to. So that privacy breach, it's a privacy breach, would be of interest to the public because it's misconduct relating to a police department. And this court has been holding since, I think, the 1990s or even the 1980s that abusive practices by law enforcement agencies do represent matters of public concern. And this case falls squarely within that. It doesn't sound that remarkable to me. What the district court did was it took two cases, Jackler and Nagel, and it compared our case to those two, and it said this case is closer to Nagel. But this case is nothing like Nagel. In Nagel, it wasn't a police department, and it was a signature forgery that nobody would care about because it didn't affect anybody, and who cares that the teacher's evaluation was signed by somebody else. And I'm not saying it's quite like Jackler either because it's not a police beating, but you don't need a police beating to engage in protected speech when you're working for a police department. The question is, does this involve abusive practices or misconduct by a law enforcement agency? And considering Patricelli pled guilty to a crime, I would say the answer to that is yes, and that the law is clearly established. And that's the long and the short of it on the First Amendment claim. It's not much more complicated than that. But an officer does have an obligation, and I realize it wasn't argued, but maybe it needs to go back to be further developed, but an officer does have an obligation to report a crime or to ferret out and report a crime, and obviously that's what happened here. Sorry. Obviously what he reported, as you so well explained to us, it turned out to be a crime which the perpetrator pled guilty to, right? Correct. Okay. So we've got a police officer reporting on something that is a crime. That's what cops do as part of their job, and thank heavens they do that. And he was essentially doing his job as a police officer reporting a crime, which also happens to be a matter of public interest. Of course it does. But every time an officer reports a crime out here, you know, or arrests somebody and then files a report on that, how is that a matter of protecting speech? Wouldn't that undermine the holdings where the plaintiffs prevailed in this court, though, where the plaintiffs in those cases, Matthews and Jackler, spoke up about misconduct in the department and it was found to be citizen speech? You know, I understand the question. It wasn't developed. I don't see anything in the record on Garcetti, and I don't think the Garcetti issue was really fully developed on appeal, so to that extent it's waived. So for now the question, the very narrow question is, was it clearly established that he spoke on a matter of public concern? I think the answer is yes. Of course what he spoke on was the fact that a senior officer in the police department had run a background check on a person who was in the neighborhood and turned out to be the Hillside burglar. That sounds to me a lot like what police do and maybe should do, except for the overlay of these personal relationships. Well, because Patricelli was doing it for purely personal reasons. You can't abuse police department computer infrastructure simply because you don't like somebody on the street and you want to get back at them and you're nosy and you want to know what's going on with their life. That's not the purpose of the e-justice system. That might be an argument Patricelli can raise at trial, supposing. I suppose, you know, well, I was just being a good citizen, but the response is you had no authorization to even use the program in the first place and it was for strictly personal reasons. I think he admitted to that. Well, you pointed out earlier that the fact that Gorman reported it for personal reasons is irrelevant. Well, no. So we have the personal reasons using all of this. It's two different personal motives. Patricelli did something improper for highly personal reasons. Gorman reported it arguably according to defendants for personal reasons. I would say no, he did it because it was wrong, but the question of whether Gorman was solely motivated by personal reasons to report the misconduct is for the jury because this Court has said in Sousa, some other cases, there's always going to be some personal motive when a public employee speaks up on a matter of public concern. It doesn't mean he has no case. Who speaks purely in a matter of complete public spiritedness? Some people do. But we see cases where it's not 100% and they still have cases. Thank you. You've reserved rebuttal, so we'll hear you then. May it please the Court, Kevin Martin for the appellee's Rensselaer County Sheriff's Department. Essentially, there are two issues in the case. The first issue is whether Plaintiff Gorman spoke as a citizen on a matter of public concern. And the Supreme Court has said in Pickering that a matter of public concern is something of public importance. And we submit that what was done in this case with respect to the EJUST system is not a matter of public importance. But he was prosecuted. Well, he was prosecuted, but there is no crime. And as we said in our brief, there is no crime. And on the reply brief, no one is able to point to a law that says it's a crime to use the EJUST system. It's against workplace rules. You can be a public whistleblower without reporting an abuse that is a crime. If it's a crime, that sort of suggests strongly that there's a public interest in avoiding what was done. It is not a crime. There is no crime for using the EJUST system. Was he convicted of that? He had two claims against him. He had two felony charges against him. He had two felony charges, and he also had a claim against him because he called Mr. Gorman on February 15th and he threatened to break Gorman's jaw. What was the title of the offense that he pled guilty to? The misuse of a computer, which is strange because he never actually used the computer himself. And this is important. Here's what happened. It sounds like it's the EJUST system, doesn't it? No. Here's what happened. What about the other computer? He never touched the computer. He had somebody touch the computer. It's true. But the reason that he settled the case with the prosecution was that he had two different claims against him. One arose out of this EJUST issue. There's no crime for that. The other issue is when he called Gorman and he threatened to break his jaw. So in the town of Skadiko, he had been charged criminally. There was an order of protection against him for threatening Gorman. That case was consolidated with the EJUST case. Those two criminal cases were pled out for the misdemeanor misuse of a computer while my client was trying to get custody of his child with Kim Gorman. I don't understand. The misuse of the computer is directing somebody to use it to abuse the EJUST? He didn't hit somebody over the head with his computer. He compromised the two claims for that misdemeanor. He never used the computer himself. There is no specific crime for use of the EJUST system. There's no difference between using the EJUST system and taking the sheriff's car and going on vacation with it. And somebody seeing you will say, hey, you shouldn't be using the sheriff's car, public assets. You can use the EJUST system to check out a rival. You can just say, would you run my brother-in-law? That's against workplace rules. No, you can't do that. It's not a crime, but it's against workplace rules. Just like driving the sheriff's car out on your week-long vacation can't do that either. That's against workplace rules. Is the county's position that it has to be a crime in order to be a matter of public interest? I mean, I know we were talking about that. I wouldn't go that far. I think what our position would be is what happened in this case is no different than stealing pencils from the sheriff's department or taking the sheriff's car out to buy groceries. If I were a taxpayer in a small town, which I am, I would be interested in whether my constable, which is all we've got by way of law enforcement, were taking property that the town taxpayers had paid for. And I don't care what it is. That's true. You'd also be interested if somebody committed a felony forgery. But this court has said that if someone commits a felony forgery, you don't want forgers working for the locality either. Which case was that? That was Nagel v. Marone. Yeah, but the police didn't prosecute the teacher though, the vice principal in that case, right? In other words, they went to the police with this, that the vice principal had signed her name to her evaluation, and the police declined to prosecute. That's true. And this court said that that's different. That was just an internal grievance, and the police chose not to prosecute it. Here he was charged with two felonies, pled guilty to a misdemeanor misuse of a computer. As Judge Jacobs asked, what did he do with the computer? Did he hit somebody with it, or was it the e-justice system? He compromised the assault claim and the e-justice claim all together. So if you review the record on appeal, it's not that simple. It's not that he got charged with the two felonies and it was pled down to a misdemeanor just for the e-justice. No. What happened was the two cases were consolidated, the town of Skadiko and the city of Troy. They were put together. He compromised them down to that misdemeanor. It sounds like you're arguing that a jury trial is needed to get to the bottom of this. I don't think so, Judge. As I said. He was convicted of abusing a computer. And you're saying that that really is not the offense for which he pled guilty, even though that's the offense for which he pled guilty. All of this is becoming very, you're really getting mired in facts and you're conceding implicitly that they are material. Well, the facts are undisputed. He did ask someone else to go and look up Peter Colantonio's publicly available records. I went and I looked. And when faced with a number of charges, he and his attorney decided he would plead guilty to having misused a computer, which was exactly what you just described. That's correct. All right. So then if those are undisputed facts. It's not as simple as pleading guilty to the use of the e-justice. He could have gone on and used the computer to do, to buy stuff on Amazon. That's a misuse of a computer, too. It's not proper use of it. There's no factual basis in the record for that, right? Well, what I'm saying is it's analogous. There's no difference. Well, that's Jacob's question, then it sounds like we've got some facts in dispute that need to be ironed out by a jury. I don't think there are any facts in dispute. You're not letting us infer anything about what the misuse of the computer was. He pled to that. That's not in dispute. It's also not in dispute. We know that, but you're saying, but the facts are all wishy-washy and he chose the lesser, which obviously some smart defendants do. Well, here's what happened. The e-justice system, you could go on to www.warrantcheck.com, www.arrestwarrant.org, a public website, arrestwarrantrecords.com, allgovwarrants.com. This is all publicly available information. Anybody can do it on their home computer. The fact that he used the e-justice system, he shouldn't do that. He shouldn't order his Christmas gifts on Amazon on the company computer either. Those are workplace issues, minor workplace issues. That's what happened here. Is the e-justice system the same as the NCIS? Do you know what I'm talking about? I don't think it's the same. But it is a records check. It is. If a probation officer has a pre-sentence report, uses NCIS, or before a detention hearing, the attorney's office will NCIS somebody to see what the record is, right? Is that what this is? It's convictions and warrants. It's publicly available records, convictions, and warrants. Same thing that I could do on any one of you with my cell phone over the next five minutes for $29. But I understand, though, my recollection is, though, that that was prohibited by law enforcement. You couldn't use that for your own personal purposes and everybody knew it. Am I wrong about that? No, the same way that you can't use the sheriff's car to go on vacation. That's why it's not a matter of public concern. It's just simply not important enough. My sheriff was letting his car be used or her car be used so one of his deputies could go on vacation? That's true. You shouldn't do that. And it's a workplace violation for which you should be punished. It's a taxpayer concern, and it's my dollars that are paying for that car and probably that gas, and I don't want some officer out using it when she's not on duty, running radar or whatever. But it doesn't rise to the level that this court has found previously where there's prosecutorial misconduct. But we're not precluded from saying this is a matter of public concern, are we? Is there a case that says this is not a matter of public concern? It would be inconsistent with the court's prior decisions. Because it doesn't rise to the level of what we've said previously? Right. It's the same thing as stealing pencils from the sheriff's department. You shouldn't do it. It's a violation of workplace rules, but it is not. Stealing of pencils really does not involve the invasion of privacy. I mean, he looked up this person's record and found that his former girlfriend is now cohabiting with the hillside burglar. But he could have been. He found out that this was probably an upstanding fellow who was a car mechanic. I would submit, Your Honor, there is no right to privacy in public records. These are all public records. He was convicted, and there are outstanding warrants. There's no right to privacy. You said earlier that this is like stealing pencils, by which I take it you meant that the public interest is very low. Right. It's a simple misuse of public property. That's what it is. The question is, where do we look to find out whether that is a matter of public interest? I think you would have to look... Stealing of pencils, the abuse of a computer for your personal transactions, or to look up dirt on the person who's cohabiting with your former girlfriend, which is the case we have. Where do we go to find that if the report is an internal workplace report of a petty kind, that it is not of public interest? Are you asking how would the public find that out? No. I'm asking if it's a matter of... You were saying that this is not a matter of public interest, whether somebody is stealing pencils. Now, essentially because it's de minimis, or because it doesn't rise to the level of something that would capture the public's interest or attention. Where do we go to look for what that threshold is, or why it's important? I think the prior decisions of this court have looked at whether or not there are widespread abuses. I would look at the quantity of what happened. If somebody stole something significantly more than pencils, embezzled hundreds of thousands of dollars, or took evidence from the evidence room, cocaine, and sold it on the street, those kinds of things, those real, real misconduct which has a large impact on the public, that would be something of public concern, not something that's just an everyday, vanilla workplace violation, which happens every day. You correct it. Is it wrong for me to infer that the conduct essentially wasn't, oh, this is just a public records check. Instead, it's a, I'm upset with my former girlfriend, ex-girlfriend, because she has left me, and I'm going to figure out who she's hanging out with now, which seems to me, certainly in today's climate, having developed over the past three months, or two months, or whatever, is probably something that the public has a concern about. That question presupposes the kind of thing that was argued by the plaintiff in their brief, that this is surveillance of some kind, and a big misuse of police abilities to go and find out what people are doing. It's not the case. It doesn't have to be a big misuse, but he wasn't setting out to figure out who the hillside burglar was. He was setting out to check on his ex-girlfriend's current boyfriend. He was worried that if his son was in the car with the hillside burglar, and he got stopped, he would run, and they'd get into a high-speed thing, and his kid was in the car with him. He didn't like that, and that came out during the testimony. But he could have simply gone to his home computer to www.warrantcheck.com. Instead of doing that, he used the company computer. Shouldn't have done it. There's a second claim here, and that's infringement of the right of intimate association, because I gather this is rather tangled family history that Petrocelli told Gorman's sister to control Gorman, and therefore she, who didn't seem to mind cohabiting with the hillside burglar, got angry with her brother. What is your view as to why you prevail on that? This comes back to the Adler v. Pataki case that this court decided in 99, and very recently, in 2014, in Sharp v. City of New York, 560 Federal Appendix 78, a 2014 case, the court kind of reviewed the decisions in this circuit and said that we have not decided whether a plaintiff must allege that a state act or intended to interfere with an intimate association to state a claim. Most of the circuits and the district courts within this circuit have found that intent to interfere is a necessary part of an intimate association. Is the circuit split on that? Pardon? Is the circuit split on that? That is correct. And the court went on to say that we don't have to decide in this Sharp case whether or not that's a- Well, do we have to decide it here? I don't think so. I don't think so. There isn't enough. It's not a- What you did in Sharp was you said this is not a plausible claim. We don't have to go that far. You keep saying it's not enough. Over there it was pencils, and over here it's not enough for another reason. But I don't know where we get to these thresholds. Well, at a bottom, what happened in this case is Mr. Gorman tattletaled on Anthony Patricelli. Anthony Patricelli was mad about that, and the two of them allegedly had some sort of conflict at work. I don't think that's what James Madison had in mind when he wrote the First Amendment. This case just doesn't rise to constitutional dimension. It's not enough. It's basically a little workplace dispute between two people over a female. Did you make a qualified immunity argument in any of this? We did. We made a qualified immunity argument. It wasn't reached on the association claim because the lower court found that in looking at all of the district court cases and some of the other circuits that the intent to interfere and the requirement that you burden the association, that wasn't shown in this case. So he didn't reach the qualified immunity decision. But since the issue is unsettled, and even if the court was wrong about that, we would argue that qualified immunity would operate. That's correct. We would say that Wright and Adler itself, the Second Circuit has said it's not clear where the source of the right is. It's not free from doubt. And because of all of the decisional law in this circuit and in other circuits about burdening an associational right, that it would not be totally clear to a police officer in Troy, New York, that this could not be done. Thank you. Thank you. Judge Jacobs asked, where do we find, where do we look to see if this speech is a matter of public concern? In Lane v. Franks, the Supreme Court said speech is a matter of public concern when it is a subject of legitimate news interest. And as Judge Hall said, an issue like this in a small town would certainly be on the front page of the local newspaper if the newspaper found out about it. Police officer, you know, spies on- Well, if the town is small enough, then something finds its way into the local- Well, even a mid-sized newspaper. They have a house in a little town and they report when there's a squirrel in a post box. Even a mid-sized newspaper. You're a privacy breach, a privacy breach, right, that somebody's abusing a computer. In this day and age, we're all worried about computer breaches, privacy. Where does this officer get off snooping around on somebody he has no business looking into except for personal reasons? That's an abuse of police authority. It's not the same as going onto Amazon from a company computer because there's no privacy problem. You're not intruding on anybody's privacy concerns. It's not comparable to stealing pencils. It is comparable to taking- It sounds like the only news interest here is that the guy he was checking into had a warrant for burglary. Well, that's one angle, but the other angle is the news interest is that it's an abuse of public equipment. It's a privacy breach by a public official, by a police officer. I don't want to be living in a community where the police- By a police officer, right. That's the angle. If it was Joe Smith working in the housing department, I don't know. But a police officer is different because we all worry about privacy breaches in this day and age. On the familial association, Adler is really the place to look. It's really the only case, published case, this court really addressed the contours of a claim like this, and it doesn't say anything about intruding, intentionally intruding on the family relationship. It just doesn't. Adler was a straight retaliation. But several circuits have said that that's a component or even an element, and if that is so, then why wouldn't there be qualified immunity? Because our circuit in Adler- We haven't said anything. Well, but the holding in Adler rejects that analysis because in Adler it was simply vindictive retaliation because we don't like your wife and we're going to retaliate against you, and that was it, nothing about intruding on the relationship or ending the marriage. So if the Eighth Circuit says one thing but the Second Circuit has impliedly or strongly rejected that analysis, then we go by what the Second Circuit does. And in Adler, you know, you have Patricelli threatening violence against this guy for interfering with his personal relationship. That's retaliation because of the plaintiff's relationship with his sister, and there is evidence that he did interfere with the relationship. I think the plaintiff testified that the relationship with his sister deteriorated, they don't talk anymore, and Patricelli drove them apart. You know, again, it sounds like a fact issue. What was Patricelli's intent when he made these physical threats, right, which led to a workplace violence? And, you know, this whole argument sounds like summary judgment, summation, a trial. What did somebody intend to do? What was the motive? What really happened? That's not the basis for summary judgment. What do you say to the impression that what's going on here is some fairly ugly family disputes that is simply being recast in terms of constitutional issues? Because they are constitutional issues. It began as a personal dispute, but it turned into a constitutional issue. Did it ever stop being a personal dispute? That's something for the jury. The plaintiff is going to say, look, I don't like to see people abusing the public trust, abusing the public's computers, and, you know, it started out as a dispute, but I blow the whistle because I'm a public-spirited police officer, and who cares how it originated? Look what happened. He violated the public trust, and that's all that matters, and he pled guilty to a computer crime, so it was not a frivolous act of speech by the plaintiff. Thank you. Thank you both. We'll reserve decision.